You may proceed, Counsel. May it please the Court, the District Court committed a sentencing guidelines error and a statutory error in this case. The sentencing guidelines error was the imposition of a 16-level enhancement for a crime of violence. Mr. Nunez-Medrano's Texas offense for conspiracy to commit aggravated robbery was not a crime of violence under the guidelines because it did not have as an element the attempted use or threatened use of force and because, for the additional reason, it does not qualify as generic robbery. The statutory error was finding that the Texas offense was an aggravated felony on the grounds that it was a crime of violence. It was not an aggravated felony, again, because it was not a crime of violence in that it did not have as an element the use, attempted use, or threatened use of force against another. Because the use of force issue is common to the sentencing guidelines error and the statutory error, I'll discuss that first. I'll then proceed to discuss the additional guidelines issue of generic robbery. Do you have to win on both of those points to win on your crime of violence argument? Well, it's two different answers, Your Honor. Under the sentencing guidelines, I do have to win on the use of force prong and on the generic robbery prong. On the 18 U.S.C. section 16A, I just need to win on the use of force prong since section 16B is unconstitutional. And that is a statutory issue under section 16. The Texas conspiracy to commit aggravated robbery is not a crime of violence under either 2L1.2 or 16A because it does not have the required use of force. In Burris, this court looked at the least culpable conduct of the Texas robbery statute, that is, causing bodily injury during theft and held that the use of physical force as an element because Texas defines bodily injury expansively to include minor physical contacts that are more than mere touching. The court concluded that such minor injury is not sufficient to be the use of violent or destructive force as required by the Supreme Court's decision in Curtis Johnson under ACCA. Because the use of force under ACCA is the equivalent of the use of force clause in 2L1.2 and in 16A, it does not have the required use of force. Robbery and conspiracy to commit aggravated robbery do not have the use of violent or destructive force. Now that there's been such a focus that under the ACCA it's a violent felony, we've got to have some violence in here, and that's not been the focus under the sentencing guidelines, is there now a bit of a parting of the road there on equating ACCA force with force? I don't believe so, Your Honor, and I guess I don't agree with the premise of the question. I think that this court has said repeatedly in Dominguez for one case that the force under 2L1.2 is violent or destructive force. In other cases in our brief, also. So I don't think there's any parting of the ways. And I think the court's also said that 16A and 2L1.2 and ACCA are equivalent. But I mean, we're having a massive evolution, if you will, of these things with each Supreme Court decision. So Johnson's fairly new. Some of these cases are older when, I don't know, the world seemed different from my perspective than it does now. So I'm just asking, since ACCA's statutory, there's all this focus on the constitutional quality of the residual clause and all that that we don't have in sentencing guidelines, does that alter the trajectory here in analyzing these precedents? Your Honor, my answer again is no. I mean, the court has repeatedly said that. I mean, just to get to the nut of the problem, if the court's talking about Johnson and Castleman, I can address that. Where the government's trying to back off of force needing to be violent force. And frankly, Your Honor, I think that argument is completely untenable. If you look at Curtis Johnson, the Supreme Court said force is a term of art. But here in Curtis Johnson, we have a phrase violent force or violent felony. And that term of art, that common law term of art, does not apply. We do not apply that minor force where the term violent or violence is paired with it. And that term is paired with force under the sentencing guidelines, too, a crime of violence. Now, the government then wants to somehow take that statement and then move to Castleman and say, see, Castleman used minor force. But they ignore that Castleman again emphasized that Curtis Johnson was the use of violent force. And they then said, oh, here in the misdemeanor domestic violence context, we can use the common law term of art. So to me, the argument is completely untenable because it ignores the express language of the Supreme Court. I mean, I don't understand how you go from Curtis Johnson saying common law force doesn't apply here because we have the word violent, and then going to Castleman and say, all right, it does apply here because we have domestic misdemeanor, and somehow say, okay, see, the Supreme Court said, it therefore applies where you have violence. I mean, it's a non sequitur. Okay, does the fact that we've granted en banc rehearing in reis contraris impact any of the arguments you just made? Because they sound like they're overlapping a little bit with the arguments there. Your Honor, that would depend on how far Burr—the answer is yes, possibly. It depends on how you read Burr's because in reis contraris, if you decide that you don't need violent or destructive force, then you would need to look at what kind of force Texas requires and decide whether that's going to meet with whatever contrary decision you've made in reis contraris. Do you see what I mean? You would still need to apply—if the government wins reis contraris, you would still need to look at the en banc decision, which I don't expect they will, by the way, but if they were somehow to win that, you would need to look at what you said in reis contraris, which doesn't involve a Texas statute, right? It involves— Unless you think Missouri manslaughter is going to be so sui generis that it's not going to impact any other case and we took it en banc because we're too unintelligent to figure that out. That's a compound question, Your Honor. Well, start with the sui generis of the Missouri manslaughter and you can leave our intellect out of it. Thank you, Your Honor. I appreciate that greatly. I guess all I can say is I would need to wait and see what the court said in reis contraris and then we would look at what Burr says about the level of force needed. And it could be that reis contraris, you look at that and you say, oh, well, this undoes all of Fifth Circuit law, including Burr's. Counsel, should we wait? Because it seems like that your client, if I read this correctly, he received the low end of the higher range, but he would be out. If you were to prevail and the judge were to also sentence him again to the low end, he would have been out in May. Isn't that right? So it's already past the time for which he would have been out if you were successful. So if we hold this for six more months or whatever, we're making it where the relief gets moot at some point, it would seem, to wait for reis contraris. Or do you think we should wait another six months or whatever it will take for us to get an opinion out? And I'm not foreshadowing. I don't think you should wait and I need to change my answer a little bit, Judge Haynes, because reis contraris might just decide, and I want to back off, reis contraris might just decide causing injury is not the same as the use of force. But it isn't necessarily going to decide that Burris is wrong because you still have slight force and that may not qualify. Do you see what I mean? You can say causing injury isn't necessarily the use of force, but you can still ask, okay, what kind of injury do you need to have? And Burris says very slight injury. So, again, I guess I get to my same answer, is you have to wait and see what reis contraris says. But do you want us to wait? No, Your Honor, no, I don't, because I think under current law I went under Burris. You don't have to decide whether, as the court held in Burris, you don't have to decide whether causing injury is the use of force and whether you should reverse this circuit law, and I think I just went under Burris. Are you harmed if we wait? I believe so, Your Honor. The defendant, of course, will spend more time in jail, and yes. What's his current release date? I don't have that off the top of my head, Your Honor, I'm sorry. Now, isn't it May 4, 2023? I'm not going to argue with you, Your Honor. But it would go down to 2018 if he were successful on both the 16 and the 8. Yes. If he got within the guidelines. Am I wrong? Yes, well, unfortunately, Your Honor, as I conceded in my supplemental, my reply supplemental letter brief, Godoy would apply to the 8. So what would be the right guidelines according to you? I believe it was 24 to 30, Your Honor. It would be the, or it could be 27 to 33, but it's in that 20 to 30s range. And I originally, in one brief, as I came off of it in my reply brief, said, no, wait a minute, under Godoy, I unfortunately don't win on the guidelines aggravated felony. Okay, so then it would be February 4, 2019 to October 4, 2019 would be the correct range? Yes, that seems correct, Your Honor. I don't have it in front of me. I'm sorry. The correct range would be, now I have 33 to 41 months without the plus 16, but with the plus 8. And his range was 77 to 96 months, and he got a mid-range of 84 months from the court. The government asked for the low range of 77, but he got a mid-range. So I don't think you should wait. I think that we win under Burris, at least under the first argument. Yeah, I was going to get to the fact that, putting aside Burris, you still have this generic robbery issue. Yes, Your Honor. And you could lose on that, regardless of whether Reyes-Contreras is helpful or hurtful, or we wait or we don't wait, and Burris does or doesn't result in an en banc, et cetera, et cetera. I could, but I hope I don't, Your Honor. Under Sante Esteban Hernandez, per Judge King, the court held in 2006 that generic robbery, that Texas robbery fit generic robbery. And the premises that the court used were, number one, it relied on the model penal code with regard to what it had to say about taking from the person, which involves use of force. It also said that the majority of states require taking from a person or the presence, the person's presence, by means of force or putting in fear, and that generic robbery involved immediate danger to the person. This court in Davis also said that generic robbery involves interacting with the person. And as we said in our brief, in the Texas Court of Criminal Appeals case in Howard in 2011, the court said that generic robbery involves interacting with the person. And the court found that where the perpetrator was unaware that there was anyone around, and the store clerk was in a back room and had locked the door, and there was just a video camera, that that was sufficient for Texas robbery. Because you don't have to intend to put someone in fear, you don't have to know they're there, you don't have to interact. All you have to do is act in some way that's reasonably likely to cause someone to have some fear. I mean, this was a store that was open, and there's nobody in there, but he's brandishing a gun, and he doesn't know nobody's in there right in that front. And in fact, somebody is in there, but they're in the back. This isn't like breaking into a house you think is empty, and then you encounter somebody there, or somebody's scared, but you don't know that they're there. That would be burglary. But here, you have this added element of he's brandishing a gun, and he's... Is that sufficiently different from what Santos Zaban, I don't know how to pronounce it, Hernandez said? No, it's not, Your Honor. He had a rifle. I don't know that he's brandishing it, and it's just like breaking into a house where you don't think anybody's there. There's nothing in the case about he knew anybody was there. Well, I mean, you're walking into a business. It's not the same thing as breaking into a house. It's a burglary. I mean, that's my point, that Texas turns robbery into something akin to burglary, because you don't even have to know the person is there. You walk into this, like burglar, you walk into the structure carrying a gun, which you could do in robbery. You don't know anybody's there. You see a wallet on the counter, like he did. But wasn't the business open, or was it not? It was open. Okay, that's what I mean. That's a little bit different from breaking into a house you think is empty. I mean, when I walk into the 7-Eleven, for example, and there's nobody at the counter, but the door is open, I mean, somebody's there. They're just not there there in front of me, but they're there. Why do you assume it wouldn't be burglary if the door of the house were open? If it's an unauthorized entry, the door is unlocked. You walk in, and you take something. I'm not saying they're exactly akin to burglary, but you're assuming that because it's a store, if the store were open and the clerk had run out to do an errand, and he walked in and took the wallet, same thing, right? That's a burglary. Counsel, I think you've saved time for rebuttal. On rebuttal, can you discuss whether this is the ordinary case? It has to be in the ordinary case. You can't have an extreme case for the enhancement issue. So discuss that when we have time again. May it please the Court, Seth Gagliardi on behalf of the United States. Your Honors, the lower court correctly enhanced Mr. Nunez-Medrano's conviction for 1326 to 16 levels under the Crime of Violence Provision of U.S. Sentencing Guidelines 2011 Version 201.2B1A2. First of all, because it is an enumerated offense, and under Santa Esteban-Hernandez, it does qualify as a federally defined robbery under that enumerated offense. Additionally, they correctly enhanced Mr. Nunez-Medrano's crime to 16 levels because it does qualify as a crime that includes the use, threatened use, or attempted use of force. But not in our current precedent? Not in our current precedent, Your Honor. So you can't win that argument today? No, Your Honor. However, as has been pointed out, we are in a great degree of flux in regards to this issue. And there are pending petitions for hearing on Bach in Burris and pending on Bach hearings in Reyes-Contreras in which the Court will decide whether or not Rico Mejia will be overturned or not. Would you tell me your perspective, putting aside the issue of waiting or not waiting, what is your perspective on whether Reyes-Contreras is likely, understanding that you don't know how it's going to come out either, is likely to have a bearing on this case? Your Honor, given the degree of effect that that decision would have, I do believe it would have a bearing on this case because although none of us have a crystal ball here today, it's highly likely the Court's going to weigh in to some degree as to the overall application of force and what force constitutes in these sorts of circumstances. And what degree bodily injury or what degree of bodily injury is required by what degree of force and how that weighs on this statute in particular that we're discussing today. What about the direct versus indirect issue? The direct versus indirect issue, Your Honor, I believe may come into play, but there are additional cases that are also looking at that. I know currently we're waiting on state and quarrels in the Supreme Court, and generally a look at whether indirect or direct force is to be considered adequate force to constitute the attempted use, use, or threatened use of force, particularly the use of force provision, Your Honor. And direct versus indirect is specifically one of those issues that does come into play considering all the upheaval on this issue. The courts seem to say in both in Castleman in particular in discouraging the excuse of the poisoning case that seems to come up regularly as an example. A lot of robbers are using poison apparently. Your Honor, you did point out quite illustratively in your Herald dissent how extensive robbery is, particularly in Texas. Well, burglary. And to go back, well, burglary, but you did address, I believe, some robbery numbers as well and the effect that Herald would have on those as well, Your Honor. But we don't get to have common sense here. We have to follow the law. I mean, don't we? So while that may be true that it makes it to where hardly any laws qualify, we have to go with what the law says. I understand that, Judge Elrod. I would also point out, though, that Taylor, the Supreme Court, and in Santa Estevon Hernandez, Judge King, encouraged the use of common sense to some degree to determine these issues. And if you have to go as far back as a 1901 decision on a poisoning case, I would say that you're reaching pretty far back. But there are quite a few other ones now. There's the HIV case, and there's this enhancement issue. There's this other new case that we're going to have to talk about in a second. So there are other current cases that are relevant. Your Honor, Judge Elrod, are you bringing, or is the case you're discussing the epileptic seizure case related to a tweet, or is it the approving somebody backing out of a car, knowing that the case wouldn't be clear? I'm not sure which case you're... No, I think that there are several others of the non-force, like in the assault context and other. Texas is not requiring force in more updated cases. But regardless, do you say that we should wait? I want to ask you about that. If we keep waiting and waiting and waiting, then these cases become moot. And other cases are also waiting on them. How is... Do you have a... Does the government have a position on that? Your Honor, the government's position on the case in Mr. Nunez-Medrano is, first of all, his robbery conviction would fall under the enumerated offense clause in the enhanced merit issue here. So we do not need to wait in this case. Sante Esteban Hernandez should control in this case. And in this case, we have every reason that we can decide on the merits of the record. So as far as Mr. Nunez-Medrano's case, Sante Esteban Hernandez controls. It is still an enumerated offense under 2L1.2B1A2. And I believe it's Note 1B3. It still is an enumerated offense. What about this argument that, well, you know, you wander into a store and, hey, there's nobody here. I guess I'll just, you know, take what I want to take. Then that shouldn't be a robbery, according to counsel opposite. What's your thought on that? I understand the argument on Howard. And the government's position would be that Howard is not an intervening change in law. It is, in fact, one case in which Texas is simply elucidating the fact that to qualify as a threatened use of force, you don't have to have an admission by the defendant that he was absolutely aware that someone was in an open convenience store when he walked in, masked with a rifle during the hours of operation, and was actually cognizant that there might be somebody hiding in the back in that store. It would seem illogical to reward a defendant for, albeit expressing and living up to his Fifth Amendment right against implying his own guilt and testifying against himself. You don't need an outright admission that you saw the victim that you're robbing. So you're saying that Howard is inferring from the circumstances that I was discussing with your opposing counsel, i.e., that the store was open for business and yet there was nobody at the counter, that that might be perceived as there's still somebody in the store somewhere. Yes, Your Honor. That can easily have been implied. And, in fact, in Howard, the court did discuss a sort of reverse scenario in which it said, although it was a first impression issue in Howard, they had a reverse scenario where an individual, a woman, walked outside a store where she had seen her husband shot. She laid her purse down and attended to her husband while in significant fear for her own safety. The purse was then taken. So in that sort of reverse scenario, the victim is unaware of exactly where the defendant is on a communicated threat, and that had already previously been decided by the Texas Court of Criminal Appeals. So this issue of a direct or indirect threat, it's really the focus is whether or not the victim feels that threat and whether adequate force or threatened use of force is shown by the defendant and perceived by the victim. So let me ask you the hypo that Mr. Socolow gave, which is walking into somebody's left their house door unlocked. Someone walks in with a gun or a firearm of some sort, rifle, whatever, and takes stuff. Never sees a person, but there is a person who hears them come in, goes in their bedroom, shuts the door, and sits there in panic. But the person never sees that the robber or burglar never sees the person. Is that a different case from Howard that might come out differently? No, Your Honor, I don't believe it is. First of all, we'd be dealing, if it were someone's home, with a burglar by habitation case, and you wouldn't necessarily have to show that there was perceived force or threat. No, I'm saying could you charge that guy? I mean, you've made the distinction that when I'm walking in a 7-Eleven, the door's open, it's normal hours, 3 in the afternoon or whatever. I'm expecting there to be a store clerk somewhere. When I walk into a house with just the door unlocked, you know, some people leave their doors unlocked and they leave and go to the store for a little while and come back and whatever, and they didn't lock the door behind them. It's a little different. I'm saying is that a different scenario vis-à-vis robbery? Could you necessarily apply Howard there, or would that be yet another extension of the law? Judge Haynes, it would still be the same, first and foremost. Okay. So you don't think it matters that it was a business that was open and all of that? That's irrelevant in your view? No, Judge Haynes, I think that's irrelevant. So then how do we, anybody who's armed and commits a burglary is now a robber, according to you. Isn't that going a little bit far? I don't think it's going too far, Your Honor. First and foremost, burglary is an aggravated felony and a violent felony in and of its own. Depending on which circuit you ask. Depending on which circuit you ask, true, Your Honor. But also, it can be perceived, and it's likely to be perceived by anybody, that if they're entering into a private home, they're likely to interact with somebody and they won't know until they're in that home. But didn't Santus Zabon and Hernandez make a distinction on that? That, you know, you are, the idea of robbery is putting someone in danger, and just an ordinary burglary, you go into a 7-Eleven after the hours, or just pick any, you know, any other store after hours, you're not expected to find someone there, you're just trying to steal something, that that's a different crime. Because you're not putting people in immediate danger or fear of danger. Yes, Your Honor, but most importantly, Santus Zabon and Hernandez, although it addressed the use, threatened use, or attempted use of force, it did decide, was decided on the fact that it was an enumerated offense and a generic robbery under Taylor. So putting that aside, however. No, I'm not putting that aside, that's my point. My point is that the enumerated offense included putting someone, the victim, in fear of immediate danger, whereas in an empty house, who's being put in immediate danger? And you're saying all houses are occupied. Well, not in my experience. Your Honor, I'm not saying that all houses are occupied, but what I am saying is that it would be hard from a defendant's perspective, I would think, to justify entering a house under the assumption that it's unoccupied. I think if someone were then to testify that it's occupied and that they felt threatened, that would be the testimony of the victim and it would be a fact that would come into play. Okay, I want to ask you one other thing on that, on the whole issue of divisibility. You conceded that the indictment doesn't tell us enough to narrow the case, and I'm wondering why this hiding in the bushes to enter into a business doesn't tell us that it's not the over 65 disabled person. Why were you willing to concede that? What am I missing? Your Honor, we conceded that point on the fact that it appeared that that was more a manner and means issue which would go beyond, specifically speaking, to which elements of the case were satisfied under both the indictment and the judgment, and that the court could rely upon. Factoring in as well the conspiracy issue in this case, our contention was that we did not at the time have sufficient documents to get into a discussion and to prove which elements that robbery specifically fell under. As far as the Fifth Circuit finding that 29.03A2, with the use of a deadly weapon or exhibiting a deadly weapon, wasn't something the government was able to show based upon those specific indictments and judgments. Unfortunately, in this case, we certainly wish we had had that ability. It would have made this case a great deal easier on all of us, but we weren't willing to make that argument and didn't feel that we had the substantive information to be able to make that argument, Your Honor. Okay. Do you think that Mr. Nunez-Medrano has properly preserved a 1326B2 argument? Your Honor, it does appear it's properly preserved. At the sentencing, they did argue that although it was foreclosed by the Fifth Circuit President at the time, that has now been overturned by DeMaia. And you think the briefing here to us was clear on that? Because it's a very kind of backdoor way of briefing it in my estimation, but that's fine. I'm willing to go with your assertion that it's – No, I mean 1326B2 is mentioned only in passing at the beginning, and then there's just kind of get into the aggravated felony issue without ever tying the two together. And it's not until I think the reply, the supplemental letter brief reply, that they actually say you have to make it 1326B1. It's just a weird approach to it, but – Your Honor, I'm happy to amend my answer and tell you that the government's not satisfied. No, that's fine. I just found it confusing because I was – I just wasn't sure how they were tying all this together. And normally when people are trying to say it should have been a 1326B1, they say that. And then they didn't here, so I just thought, ooh. But then they talk about the aggravated felony, and they make that – those underlying arguments that would tie to that. But there is a difference because then you go off on the issue of, well, when we're talking about sentencing, the law is different and all that. But when you're talking about statute, 1326B2, then DeMaio would apply. So I found it confusing, but I just may be missing something obvious here. And certainly the language of aggravated felony is there, but the tie-ins – I don't know. I may have missed it. Regardless, Your Honor, the government's argument is that the 1326B provision is appropriate in this case because robbery does involve the use – attempted use or threatened use of force. And it's – as Santa Esteban Hernandez pointed out, although it's not directly relevant to this because that discusses the enumerated – Okay, but that is clearly – because you don't have this whole enumerated offense thing with that. Yes, Your Honor. So DeMaio applies to cut off 16B, and our prior precedent in Burris applied to cut off 16A if we stand here today and had to decide it today on the B2 versus B1 point. Yes, Your Honor. Okay. If it is divided today and the state – or the government must win if Burris is taken up on Bonk, we must win on that, and it's likely that we must win on Reyes-Contreras as well when that's heard on Bonk. So what you want us to do is decide on the generic issue today. Yes, Your Honor. But we can't avoid the use of force issue today if we're talking about the 26B2 versus B1. I realize it doesn't change his sentence, but it's my experience that people who come here without proper documents do care about the B2 versus B1 issue, and we've rather routinely either modified the judgment ourself or sent it back to be modified where there was a B2, B1 error. Yes, Your Honor. And you would agree if we're deciding today, as the law exists today, it's a B1? Yeah. Your Honor, I would say that the two issues controlling there is that Burris' mandate has not yet issued, and we are currently dealing with – But whether the mandate issues or not, it's still binding precedent on us. It's binding precedent, Your Honor. I believe only once the mandate – No, that's not true. You said that in your letter, and I thought that maybe that was just an accident. It's binding on all other cases as soon as the day it comes out the door, except as to that case. So it's exactly the opposite. It's precedent. It just doesn't go back to the district court and get effectuated until the mandate issues. Yes, Your Honor. Then our position would be to hold them bad as we filed the leather brief and asked in the letter. Okay. No, I get that, but I just – But you could win today. Assuming arguendo, you could win today. Just on your enhancement, you know, the ordinary case that that new case from Texas doesn't change anything And then we would either remand to reform to be won, or we would just do it ourselves if we're already riding. Is that your path to victory? Yes, Your Honor, that's the path to victory. And then no waiting on anything. That's correct, Your Honor. We could do that, and in answer to Your Honor's question earlier – And that's not foreshadowing you. That means that's a big if. You have to win on the enhancement point first. Yes. Yes, Your Honor. And as fact is, Your Honor, it's back to what Your Honor was asking counsel previously. The sentence was for seven years, which means the release date is in 2024. And if even on the eight-level enhancement, it would be in 2020, backdated for time. So there would be no harm in holding it in advance until a decision was made. Do you have a reason to disagree with the BOP, which would give his release date of May 4, 2023? Are you just calculating that yourself, or do you believe that this is an error? I see him out of time, Your Honor. May I briefly answer that? You may answer that. I don't have his BOP release date right here, but he was sentenced to the middle range of seven and a half years. But you wouldn't quibble with the BOP date of May 4, 2023, and then it would be February 4, 2019 to October 4, 2019 would be the correct range. I don't, Your Honor. I'm just looking at the dates I have. Okay. Yeah, I'm guessing Mr. Nunez-Medrano knows the dates of when he might get out of jail. Well, it's surprising to me no one else in the lawyers do, particularly his own. But anyway, thank you. Thank you. I'd like to address Burris. I'd like to address the ordinary case. I'd like to address Howard and then preservation. Reyes-Contreras does not affect this case, and I may have muddied the waters, because Burris said that the force is so slight, the force required by Texas law is so slight, that it cannot count as the use of violent force. So under Burris, we should win even if Reyes-Contreras- Right, and here the crime is indivisible, and the least culpable conduct is causing bodily injury to a senior citizen, which comes down to robbery to someone in a certain status. So that's why Burris applies. But Wheeler also held that aggravated robbery is controlled. Well, that's not actually, I mean, I was on the panel in Wheeler. What Wheeler said was that was a government trying to claim plain error. And we found that the argument waived first, and then we said, well, you've created enough goo here that it's not plain error. But we certainly didn't say aggravated robbery is governed by Burris. Well, I read the opinion as you created goo with regard to indivisibility, so we're not going to consider indivisibility, and then you affirm. So to me that- It was a plain error government case where the government was having to assert plain error. So it was a very different procedural posture than we have here. Nonetheless- Very different. So be careful how you read this stuff. Well, to me it says they first raised divisibility. But nonetheless, here the least culpable conduct is robbery of someone in a certain status. So Burris does apply. Second, the ordinary case, I believe the burden usually is to show that a state court would enforce the law as I say it would enforce the law. And we have the highest criminal court in the state of Texas saying, yes, this is how we construe and enforce the law. So I think I meet that prong. With regard to Howard, it doesn't matter how many hypothetical facts we come up with, because the question is the elements. So the elements under Texas law do not require interaction. They do not require using force against the person or in the person's presence. They just require looking scary and someone somewhere in a back room being afraid. So they don't require presence, taking something from the presence or person. Do we have a case that says if you can find one case where we've done it, then that counts as the ordinary case? Because I thought that in the Leo Kyle's test that we have to actually say that that would be the ordinary case, as opposed to just a one-off. I'm just asking, have we ever said if you can find a Texas case, then you win? I think if you. Or any jurisdiction. I always understood it as if the court would apply the case like that. And, I mean, here the error is preserved. So, I mean, I have a Texas Court of Criminal Appeals case that says, yes, this is how you apply the law. And so it's not plain error. Like, I have to show you something more. I'm showing you here's the case. Here's how they construe the law. Sante Esteban looked at the model penal code. This is now different, and we should win under Howard. With regard to preserving the aggravated felony issue, the supplemental objection on pages 122 to 24 said, as I read it, conspiracy to commit aggravated robbery is not an aggravated felony. Under 201.2B1C or 1101A43F or 1326B2. I think the supplemental objection preserved it. I think it's clear that counsel first did a guidelines objection and, for some reason, didn't put that in his objection. And so he said, wait a minute, here's a supplemental objection. I believe it was filed before sentencing, and the court had the issue before it. I mean, it's just a weird brief on it before us. I mean, you have the arguments you need there, but you don't really make the conclusion that you should make. It's a very strange way of approaching it, but that's fine. Your opponent's spoken to it. You've spoken to it. Yes, Your Honor. Your Honors. You are, in fact, arguing that we should make it B1 at the worst for you. You're a client. Yes, Your Honor, I am. I am, and our brief did that also. And for those reasons, I request that you vacate the sentence, remand for resentencing, and for correction of the judgment. Thank you. Thank you. We have your arguments. This case is submitted. Thank you, counsel on both sides, for your helpful argument today.